

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-221-CV**

MATTHEW JAMES LEACHMAN                                    APPELLANT

V.

DOUG DRETKE, DEBORAH A. JOHNSON,                         APPELLEES
GLENDA J. ADAMS, JOSEPH C. BOYLE,
AND DENISE ONCKEN

------------

### FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

## OPINION ON REHEARING

------------

After reviewing Appellant Matthew James Leachman's motion for rehearing, we grant the motion. We withdraw our May 29, 2008 opinion and judgment and substitute the following.

### I.  Introduction

Appellant Leachman Matthew James Leachman, an inmate housed in a Texas Department of Criminal Justice ("TDCJ") facility, filed suit against

appellees Doug Dretke, Glenda J. Adams, Joseph C. Boyle, and Deborah A. Johnson ("TDCJ employees") and against appellee Denise Oncken, the Harris County assistant district attorney who prosecuted him for the crime upon which his confinement is based.[1] The trial court dismissed Leachman's claims against Oncken and dismissed with prejudice his claims against the TDCJ employees. Leachman complains of four points on appeal.

We affirm the trial court's judgment as to Leachman's claims against Adams, Boyle, Johnson, and Oncken. However, with regard to the dismissal with prejudice of Leachman's claims against Dretke, we reverse and remand this claim to the trial court to provide Leachman with a reasonable opportunity to amend his pleadings.

## II. Factual and Procedural History

In 1998, a jury convicted Leachman of aggravated sexual assault of a child and a trial court sentenced him to forty years' confinement. *See Leachman v. State*, No. 01-98-01255-CR, 2006 WL 2381441, at *1 (Tex. App.—Houston [1st Dist.] Aug. 17, 2006, pet. ref'd) (mem. op.) (not

---

[1] His original lawsuit also recited claims against Angela S. Milbern, a former TDCJ mail room supervisor. He nonsuited Milbern in order to proceed with this appeal. Leachman's lawsuit and this appeal were brought *pro se* and *in forma pauperis*.

2

designated for publication).  Leachman filed this post-confinement lawsuit in 2004.

In 2005, after amending his pleadings to add other claims and parties, Leachman made three principal allegations as the basis for his claims: that Dretke, through his Director's Review Committee ("DRC"), allowed his mail to be unfairly withheld; that Johnson unfairly charged him with contacting the family member of a victim; and that Boyle predetermined the outcome of the subsequent disciplinary hearing on that charge.  He also alleged that Adams provided ineffective assistance to him during the disciplinary hearing and that Oncken made false statements that were used against him in that hearing.

In August 2005, the trial court dismissed Leachman's claims against Oncken after finding that she was entitled to absolute prosecutorial and qualified immunity.  In December, the TDCJ employees filed a motion to dismiss Leachman's lawsuit "under Chapter Fourteen of the Civil Practice and Remedies Code."  In January 2006, the trial court ordered Leachman's claims against the TDCJ employees dismissed with prejudice, as frivolous, for failure to comply with chapter fourteen's requirements.  This appeal resulted.

### III. Chapter Fourteen of the Texas Civil Practice & Remedies Code

In his first, third, and fourth points, Leachman contends that the trial court erred by dismissing his claims against the TDCJ employees with prejudice

3

under chapter fourteen. In his second point, he complains that the trial court erred by dismissing his claims against Oncken.

Chapter fourteen applies when, as here, an inmate files suit in a district court and files an unsworn declaration of indigency. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.002 (Vernon 2008). Under chapter fourteen, a trial court may dismiss an inmate's lawsuit for failing to comply with the chapter's procedural requirements; it may also dismiss a lawsuit that is malicious or frivolous. *Id.* § 14.003; *Scott v. Gallagher*, 209 S.W.3d 262, 265 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The trial court need not rely upon a defendant's motion to exercise its discretionary power to dismiss under chapter fourteen. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a); *Wilson v. TDCJ-ID*, 107 S.W.3d 90, 92 (Tex. App.—Waco 2003, no pet.).

**A. Standard of Review**

We review a dismissal under chapter fourteen for an abuse of discretion. *Bishop v. Lawson*, 131 S.W.3d 571, 574 (Tex. App.—Fort Worth 2004, pet. denied). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). When an inmate's

4

lawsuit is dismissed as frivolous for having no basis in law or in fact, but no fact hearing is held, our review focuses on whether the inmate's lawsuit has an arguable basis in law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.003; *Scott*, 209 S.W.3d at 266. A clear failure by the trial court to analyze or apply the law correctly is an abuse of discretion. *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex. 1995).

In conducting our review, we take as true the allegations in the inmate's petition and review the types of relief and causes of action set out therein to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief. *See Scott*, 209 S.W.3d at 266; *Harrison v. Tex. Dep't of Criminal Justice, Inst. Div.*, 164 S.W.3d 871, 875 (Tex. App.—Corpus Christi 2005, no pet.). A claim has no arguable basis in law if it is an indisputably meritless legal theory. *Scott*, 209 S.W.3d at 266–67. Further, a claim has no arguable basis in law if the inmate has failed to exhaust his administrative remedies. *Retzlaff v. Tex. Dep't of Criminal Justice*, 94 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). If an inmate fails to exhaust his administrative remedies, we may affirm a dismissal even if the ground was not presented in a motion to dismiss. TEX. CIV. PRAC. & REM. CODE ANN. § 14.005; *Retzlaff*, 94 S.W.3d at 653.

The trial court did not conduct a hearing before it dismissed Leachman's lawsuit. Therefore, the issue before us is whether the trial court properly determined that there was no arguable basis in law for Leachman's claims. *See Scott*, 209 S.W.3d at 266; *Retzlaff*, 94 S.W.3d at 653.

**B. Dismissal of Leachman's claims**

In his first, third, and fourth points, Leachman claims that his pleadings complied with chapter fourteen's procedural requirements and that, even if his pleadings did fail to meet the chapter's requirements, any deficiency could have been cured with more specific pleading. In his second point, he complains that the trial court erred by dismissing his claims against Oncken because she was not entitled to immunity.

**1. Leachman's claim against Dretke**

Leachman argues that the trial court erred by dismissing his claim with prejudice against Dretke because Dretke was properly named as an official-capacity defendant in a 42 U.S.C.A. § 1983 claim and because that claim had an arguable basis in law.

**(a) Facts as alleged by Leachman**

In December 2003, Leachman received a letter, which was "reviewed in accordance with prison rules," and which contained enclosures that the TDCJ mail room, under then-mail room supervisor Milbern, withheld from him, stating

6

that they contained child pornography. He appealed to the DRC, a panel appointed by Dretke; the DRC upheld the mail room's decision. Leachman completed a Step 1 offender grievance form on the DRC's decision, but it was returned to Leachman with the statement, "[t]he issue presented is not grievable."

Leachman filed suit against the DRC and Milbern in March 2004, seeking a release of the letter's enclosures, a declaratory judgment that the enclosures were not child pornography, and an injunction requiring the removal from TDCJ's records of any indication that he had received child pornography through the mail. He substituted Dretke for the DRC in his amended petition, in which he also added claims against Adams, Boyle, Johnson, and Oncken and sought a number of remedies in his prayer.

### (b) Application of law to Leachman's facts

Leachman contends that he only had one claim against Dretke. In his amended petition, he claimed that "Dretke, acting in his official capacity and under color of state law, allowed property to be seized from [Leachman] in violation of due process when Dretke's DRC upheld" Milbern's actions and that

7

this "independently violat[ed Leachman's] rights under the U.S. Constitution and the Constitution of Texas."[2]

Leachman did not cite § 1983 in his pleadings, but he contended in subsequent filings and in his appellate brief that his claim against Dretke was brought under that section. *See* 42 U.S.C.A. § 1983 (2003). A cause of action under § 1983 involves two essential elements: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution, or the laws, of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330–33, 106 S. Ct. 662, 664–66 (1986); *City of Fort Worth v. Robles*, 51 S.W.3d 436, 443 (Tex. App.—Fort Worth 2001, pet. denied), *disapproved on other grounds, City of Grapevine v. Sipes*, 195 S.W.3d 689, 695 & n.5 (Tex. 2006).

When a litigant seeks injunctive relief that involves a state agency's unlawful or unauthorized act, he must sue some individual in authority at that

---

[2] Leachman did not raise or brief any point involving his rights under the Texas constitution. Therefore, for purposes of this appeal, they are waived. TEX. R. APP. P. 38.1(e), (h); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing the "long-standing rule" that a point may be waived due to inadequate briefing).

agency, not the agency itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10, 109 S. Ct. 2304, 2312 n.10 (1989); *Denson v. T.D.C.J.-I.D.*, 63 S.W.3d 454, 460 (Tex. App.—Tyler 1999, pet. denied). But, when sued for damages, officials acting in their official capacities are not "persons" who may be liable under § 1983. *See Will*, 491 U.S. at 71, 109 S. Ct. at 2312; *Thomas v. Brown*, 927 S.W.2d 122, 125 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

Leachman did not clearly demarcate his claim for injunctive relief against Dretke as separate and apart from his claim for actual damages, although he did make such a distinction with regard to his request for exemplary damages against Adams, Boyle, Johnson, and Oncken. Therefore, from his amended petition, the trial court could have reasonably concluded that Leachman had failed to state a claim with an arguable basis in law because it appeared that he was seeking damages against someone who, in his official capacity, could not be held liable under § 1983. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(b)(2); *Will*, 491 U.S. at 71, 109 S. Ct. at 2312; *Thomas*, 927 S.W.2d at 125.

Furthermore, Leachman clearly alleged that Milbern's act of seizing his property was a due process violation, but it is unclear from his amended petition which constitutional rights he alleges that the DRC and Dretke violated,

9

and whether he is attacking the initial deprivation, the policy behind the deprivation, the DRC's review procedure, or the DRC's decision to uphold the deprivation. He merely states that, by "allowing" and "upholding" Milbern's seizure, Dretke, through the DRC, violated Leachman's "rights under the U.S. Constitution and the Constitution of Texas."

Based on the ambiguities presented by Leachman in his claim against Dretke, we cannot say that the trial court abused its discretion by dismissing his claim for having no arguable basis in law.[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(b)(2). Whether the trial court abused its discretion by dismissing Leachman's claims with prejudice depends on whether Leachman's errors could be remedied. *See Hickman v. Adams*, 35 S.W.3d 120, 124 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Because Leachman could have amended his pleadings to clarify the ambiguities in his claim against Dretke, dismissal with prejudice was an abuse of discretion. *See id*. Therefore, we overrule Leachman's third issue, but we sustain the portion of Leachman's first issue regarding the dismissal with prejudice of his claim against Dretke.

**2. Leachman's claims against Adams, Boyle, Johnson, and Oncken**

---

[3] Leachman does make clear in his briefs to this court that he only sought injunctive relief with regard to the "claim that his mail was unconstitutionally denied."

10

Leachman asserts that his claims against Adams, Boyle, and Johnson should not have been dismissed with prejudice under chapter fourteen because his retaliation claim did not lack an arguable basis in law when he alleged facts in his amended petition that showed a chronology of events "from which retaliation may plausibly be inferred." He also broadly complains that his state law claims had arguable bases in law and that these claims were not addressed in the TDCJ employees' motion to dismiss.[4] He contends that it was error for the trial court to dismiss his claims against Oncken based on its finding of immunity.

<u>                    </u>**(a) Facts as alleged by Leachman**

At some point in February 2004, Leachman told Milbern to hold for litigation the enclosures withheld from him by the DRC and, in retaliation, Milbern contacted David Mayo, an investigator from the Inspector General's office, to initiate an investigation into Leachman's mail. In July, Leachman sent

---

[4] However, if Leachman failed to exhaust his administrative remedies, or failed to state an arguable basis in law for his claims, those claims did not need to be addressed in the TDCJ employees' motion for the trial court to be able to dismiss them. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a); *Wilson*, 107 S.W.3d at 92; *Retzlaff*, 94 S.W.3d at 653.

11

a letter to Diana Browning, the mother of a minor who had modeled for Leachman,[5] and in August, TDCJ investigated this letter.

On August 5, Sergeant Billy J. Hampton notified him that he was "being investigated for a possible violation of Code 10.1," based on the letter to Browning.[6] Leachman asked Sergeant Hampton to check TDCJ records, stating that his contact with Browning did not violate Code 10.1 because Browning's son was not a "victim" under section 10.1. Leachman's parents also spoke with the duty warden with regard to this "baseless charge." During this time, Mayo contacted Oncken about the Browning letter, and Oncken told Mayo that Browning's son was an "extraneous, unindicted victim" and that Browning's son was "not a victim in any case for which [Leachman] is serving time."

---

[5] Leachman was a professional photographer. Leachman stated that he contacted Browning because she had made certain statements in a letter to the trial court during the pre-sentence investigation portion of Leachman's criminal trial, which he believed were based on misconceptions.

[6] Section 10.1 of the TDCJ Disciplinary Rules and Procedures for Offenders prohibits "contacting without authorization the offender's victim or a member of the victim's family, if the victim was under the age of seventeen (17) at the time of the offense for which the offender is serving a sentence." TEX. DEP'T OF CRIMINAL JUSTICE, TDCJ DISCIPLINARY RULES AND PROCEDURES FOR OFFENDERS 24, *at* http://www.tdcj.state.tx.us/publications/cid/GR-106%20Web%20doc%20%20English%202-07.pdf; *see also* TEX. GOV'T CODE ANN. § 498.0042 (Vernon 2008) (setting out the statutory basis for section 10.1).

On August 11, Adams, TDCJ counsel substitute, served Leachman with a disciplinary charge for violating section 10.1, per a report by Johnson, the new TDCJ mail room supervisor, who based the charge on the Browning letter. Adams did not tell Leachman that, with regard to the charged violation, "there were other players in the game," specifically, Mayo and Oncken. When he found out about Mayo and Oncken, at the disciplinary hearing on the violation, held on August 13, Adams told him that it was too late to call them as witnesses.

Boyle, the disciplinary hearing officer, did not allow Leachman to present his documentary evidence at the hearing and told him, "You can just put that in the grievance." Boyle found Leachman guilty of the violation and Leachman was punished. Leachman later "heard" that TDCJ employees were packing his property "[e]ven as [he] was walking to the administrative building" for the hearing.

The disciplinary case was subsequently overturned.[7] Thereafter, Leachman filed a Step 1 offender grievance form on October 25, 2004, complaining that the outcome of the August 13 disciplinary hearing was

---

[7] Leachman attached no documentation to his amended petition and included no explanation to the trial court with regard to how or why the disciplinary case was overturned.

13

predetermined, thereby depriving him of due process. In the same form, Leachman complained that the investigation into his mail constituted retaliation.[8] These acts, Boyle, and the "mailroom supervisor [who Leachman told] to hold the 'child porn' for litigation" are the only TDCJ actions and actors that Leachman complained of in the form.

TDCJ returned the form, unprocessed, to Leachman on October 26, with "Grievable time period has expired" as the screening criteria reason for not processing it. Leachman filed a Step 2 offender grievance form on November 2, asking, "How can the grievable time period be expired? I sought informal resolution and filed the grievance within 15 days as soon as I got the information that makes up the grievance." TDCJ responded on November 30, stating, "You may not submit a Step 2 appeal on a Step 1 grievance that was returned to you unprocessed using one of the screening criteria." Leachman stated in his section 14.005 declaration attached to his amended petition that he received TDCJ's "final answer on that grievance," the November 30 communication, on December 6.

---

[8] Leachman asserted in the grievance, "An 'investigation' was started as retaliation for my lawsuit, and at the flimsiest excuse from the investigation, I was illegally tried and sentenced in disciplinary court for an offense the administration knew I did not commit."

In his amended petition, Leachman brought the following claims, jointly and severally, against Adams, Boyle, Johnson, and Oncken: (1) they violated his due process rights "by conspiring to continue and enlarge Defendant Milbern's campaign of retaliation," in their personal capacities and under color of state law; (2) they "conspired to engage in an extreme or outrageous manner which was calculated and intended to cause [Leachman] severe emotional distress;" and (3) they "intentionally or recklessly violated [Leachman's] due process rights in an extreme or outrageous manner, causing [him] severe emotional distress." He also alleged that they "conspired to maliciously and without probable cause inititate [sic] or continue a civil proceeding" against him; and that they "insisted upon initiating or continuing a civil proceeding against [Leachman], maliciously and without probable cause, which civil proceeding was eventually terminated in [Leachman's] favor, but which caused actual interference with [Leachman's] person or property."

Leachman also brought due process claims on an individual basis in his amended petition, alleging that each individual acted in his or her personal capacity and under color of state law. He alleged that Adams violated his due process rights in the disciplinary hearing "by utterly failing in her duty to represent him, either out of deliberate malice or with reckless disregard for [Leachman's] rights." He claimed that Boyle violated his due process rights in

15

the disciplinary hearing "by refusing to let [Leachman] introduce relevant, exculpatory documentary evidence," "by finding [Leachman] guilty when Boyle had the IOC [Inter-Office Communication from Mayo reporting the results of his investigation] at hand[,] showing [Leachman's] innocence," and "by determining [Leachman's] guilt and punishment before the disciplinary hearing was held and evidence was heard."  He contended that Johnson violated his due process rights in the disciplinary hearing "by mischaracterizing [Browning's son] as a victim, deliberately and maliciously or with reckless disregard for [Leachman's] rights."  Finally, he stated that Oncken

> violated [Leachman's] due process rights in the disciplinary process by denominating [Browning's son] a "victim," knowing that in doing so she was providing a statement to be used against [Leachman] in a disciplinary hearing and possible criminal investigation, and knowing that said statement was false or having a reckless disregard for the truth of the statement.[9]

### (b) Exhaustion of administrative remedies through the grievance process

A TDCJ disciplinary decision is subject to the grievance procedure.  *See Comeaux v. Tex. Dep't of Criminal Justice*, 193 S.W.3d 83, 84 (Tex.

---

[9] Leachman restates his claims in his appellate brief as "[p]ersonal-capacity claims against Johnson, Adams, Boyle, and Oncken under 42 U.S.C.[A.] § 1983 relating to retaliation" and for denial of due process in a disciplinary hearing and state law claims for intentional infliction of emotional distress and for malicious prosecution in an "administrative proceeding."

16

App.—Houston [1st Dist.] 2006, pet. denied). Allegations of reprisals by TDCJ employees against inmates for filing grievances or lawsuits, or other inmate complaints about TDCJ employee actions, are also subject to the grievance procedure. *See Birdo v. Schwartzer*, 883 S.W.2d 386, 388 (Tex. App.—Waco 1994, no writ); *see also Wolf v. Tex. Dep't of Criminal Justice*, *Inst. Div.*, 182 S.W.3d 449, 450 (Tex. App.—Texarkana 2006, pet. denied) (describing the Offender Orientation Handbook); TEX. DEP'T OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK 53 (Nov. 2004), *available at* http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbkNov04.pdf (stating that the actions of a TDCJ employee are grievable). Therefore, with regard to all of his claims against Adams, Boyle, and Johnson, Leachman had to exhaust his remedies through the grievance process before he could seek judicial review. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005(a); TEX. GOV'T CODE ANN. § 501.008(d) (Vernon 2004). If he failed to exhaust these remedies, then this was an appropriate ground upon which the trial court could dismiss his claims under chapter fourteen. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a); *Retzlaff*, 94 S.W.3d at 653.

There is little authority or discussion with regard to whether an unprocessed grievance form is sufficient, in a Texas court, to warrant judicial review. *See Elias v. DeLeon*, No. 12-04-00143-CV, 2005 WL 2404113, at

17

*1–2 (Tex. App.—Tyler Sept. 30, 2005, no pet.) (mem. op.) (reversing suit's dismissal where inmate stated a claim with an arguable basis in law, even though inmate's grievances were returned to him unprocessed); *Roberson v. Howell*, No. 12-02-00232-CV, 2003 WL 1193759, at *1 (Tex. App.—Tyler Mar. 14, 2003, pet. denied) (mem. op.) (affirming suit's dismissal not because inmate's Step 1 grievance form was returned to him unprocessed but because he failed to file suit within the 31-day statutory period); *Thompson v. Tex. Dep't of Criminal Justice Inst. Div*., No. 08-01-00232-CV, 2002 WL 1301575, at *3 (Tex. App.—El Paso June 13, 2002, no pet.) (affirming dismissal where trial court found both that inmate failed to exhaust his administrative remedies and that his claims were frivolous); *see also McCullough v. Tex. Dep't of Criminal Justice-ID*, No. 02-07-00072-CV, 2008 WL 704419, at *4 (Tex. App.—Fort Worth Mar. 13, 2008, no pet.) (mem. op.) (affirming dismissal where, among various other procedural defects, inmate failed to file his lawsuit by statutory deadline).

However, the legislature designed chapter fourteen to control the flood of frivolous lawsuits being filed in state courts by inmates, consuming valuable judicial resources with little offsetting benefit. *See Bishop*, 131 S.W.3d at 574; *Hickson v. Moya*, 926 S.W.2d 397, 399 (Tex. App.—Waco 1996, no pet.). The Supreme Court recently discussed a similar issue, with regard to whether

18

the exhaustion of remedies requirement under the federal Prison Litigation Reform Act ("PLRA") could be satisfied by an inmate filing an untimely or otherwise procedurally defective administrative grievance or appeal. *See Woodford v. Ngo*, 548 U.S. 81, 83–84, 126 S. Ct. 2378, 2382 (2006).

Like the Texas legislature in enacting chapter fourteen, the U.S. Congress enacted the PLRA to reduce the amount of frivolous prisoner litigation. *Id*. at 84, 126 S. Ct. at 2382. The Court determined that the proper exhaustion of administrative remedies was necessary in order for an inmate to subsequently seek judicial review of his grievances. *Id*., 126 S. Ct. at 2382. The Court based its determination on the purposes of the exhaustion requirement, which are to give the agency an opportunity to correct its own mistakes and prevent disregard of agency procedures, and to promote efficiency and conserve resources rather than expend scarce resources on inefficient litigation. *Id*. at 84, 89, 126 S. Ct. at 2382, 2385.

The Court defined "proper exhaustion" as "compliance with an agency's deadlines and other critical procedural rules," reasoning that no adjudicative system can function effectively without imposing some orderly structure on the course of the proceedings. *Id*. at 90–91, 126 S. Ct. at 2386. The Court stated:

19

[R]equiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. . . . Proper exhaustion reduces the quantity of prisoner suits because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court. Finally, proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.

*Id*. at 94–95, 126 S. Ct. at 2388. Additionally, "[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction." *Id*. at 95, 126 S. Ct. at 2388.[10]

---

[10] The Court explained further that, without requiring "proper exhaustion,"

[A] prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds.

*Id.* at 95, 126 S. Ct. at 2388.

The grievance policy set forth by TDCJ is intended to foster efficiency; by failing to properly follow the grievance procedure, an inmate makes the entire process less efficient. *See Johnson v. Ford*, 261 Fed. App'x. 752, 757 (5th Cir. 2008); *see also Scott v. Menchaca*, 185 S.W.3d 543, 545 (Tex. App.—Corpus Christi 2006, no pet.) (stating that section 14.005 reflects that the exhaustion of administrative remedies is mandatory as to claims that are subject to the grievance system). An inmate may not file a claim in state court regarding operative facts for which the grievance system provides the exclusive administrative remedy until (1) the inmate receives a written decision issued by the highest authority provided for in the grievance system; or (2) if the inmate has not received a written decision described by Subdivision (1), the 180th day after the date the grievance is filed. TEX. GOV'T CODE ANN. § 501.008(d).

An inmate has fifteen days from the date of the alleged incident on which the grievance is based to complete the Step 1 offender grievance form and forward it to the Unit Grievance Investigator. *Wolf*, 182 S.W.3d at 450–51; TEX. DEP'T OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK at 53. The record reflects that Leachman did not file his Step 1 offender grievance form involving either the retaliation claim or the denial of due process in the August 13 disciplinary hearing until October 25. Leachman provided contradictory information on this point in his appellate brief, admitting in his fact statement

21

that TDCJ refused to process the grievance based on untimeliness, but also stating that he received "the Step 2 grievance decision." TDCJ expressly informed Leachman that he could not submit a Step 2 grievance on a Step 1 grievance that it had returned to him unprocessed. Leachman's Step 1 grievance was returned to him by TDCJ because it was untimely filed.

Leachman claims that the November 30 communication, which he received on December 6, fulfilled his exhaustion requirement. We disagree.

Following the reasoning of the Supreme Court in *Woodford*, we adopt the interpretation that the exhaustion of remedies requirement under section 501.008 of the government code and section 14.005 of the civil practice and remedies code requires proper exhaustion of remedies, i.e., the timely filing of grievances, before an inmate may seek judicial review. *See Woodford*, 548 U.S. at 81, 83–84, 90, 126 S. Ct. at 2382, 2385. Because Leachman failed to properly exhaust his administrative remedies, and therefore failed to comply with the statutory procedural requirements as to his claims against Adams, Boyle, and Johnson, the trial court did not err by dismissing these claims as frivolous. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005(a); TEX. GOV'T CODE ANN. § 501.008(d); *Retzlaff*, 94 S.W.3d at 654; *see also Francis v. TDCJ-CID*, 188 S.W.3d 799, 805 (Tex. App.—Fort Worth 2006, no pet.) (stating that the legislature implicitly authorized dismissal under section 14.005); *Smith v. Tex.*

22

*Dep't of Criminal Justice-Inst. Div.*, 33 S.W.3d 338, 341 (Tex. App.—Texarkana 2000, pet. denied) (stating that section 14.005's "obvious purpose," in light of section 501.008 of the government code, is to allow the trial court to dismiss an inmate's suit when it becomes clear that he has failed to provide the required statutory information).

Additionally, Leachman's October Step 1 offender grievance form mentioned only Boyle by name, and he made no allegations at all with regard to Adams or Johnson. Therefore, regardless of his untimely filing of the grievance, he failed to exhaust his remedies through the grievance process as to Adams and Johnson. *See Wolf*, 182 S.W.3d at 451 ("Wolf's grievance does not address the issues he brought in his civil petition, and we cannot say he either sought or received a final administrative decision on those issues."); *see also Riddle v. TDCJ-ID*, No. 13-05-00054-CV, 2006 WL 328127, at \*2 (Tex. App.—Corpus Christi Feb. 9, 2006, pet. denied) (mem. op.) ("Riddle did not exhaust the grievance procedures for those individuals named in the claim who were not named in the grievance. Thus, Riddle did not fulfill all statutory procedural requirements.").

And although Leachman claimed in his October Step 2 offender grievance form that he did not get the information that made up the grievance until after he returned from solitary confinement, even if some type of discovery rule

23

applied as an exception to proper exhaustion, it would not benefit Leachman. As early as August 5, Leachman was aware of the investigation into his letter to Browning and had informed TDCJ authorities that there were no grounds to support a charge that he violated Code 10.1. Adams served Leachman with the charge on August 11 and told him that the charging officer was Johnson; the hearing was August 13.

Therefore, as to Johnson, Leachman had fifteen days from August 11 to file his Step 1 offender grievance form to complain of TDCJ employee acts that he considered retaliation for filing the March 17 lawsuit against a mail room official. *Wolf*, 182 S.W.3d at 450–51; TEX. DEP'T OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK at 53. As to Adams and Boyle, he had fifteen days from August 13 to file his Step 1 offender grievance form to complain about retaliation on the same facts and about procedural due process violations in the

disciplinary hearing by all three.[11] *Wolf*, 182 S.W.3d at 450–51; TEX. DEP'T OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK at 53. He failed to meet these deadlines and therefore failed to properly exhaust his administrative remedies. Based on all of the foregoing, we overrule Leachman's fourth point.

Finally, although a dismissal with prejudice is improper if the error can be remedied, because Leachman failed to timely file his grievances as to Adams, Johnson, and Boyle, his error as to these claims cannot be remedied; his fifteen-day deadline to file offender grievance forms on those claims has passed. *See Nabelek v. Dist. Att'y of Harris County*, No. 14-03-00965-CV, 2005 WL 2148999, at *7 (Tex. App.—Houston [14th Dist.] Sept. 8, 2005, pet. denied) (dismissing claims with prejudice where inmate could not remedy the errors that resulted in the dismissal of his suit). Therefore, it was not an

---

[11] Because Leachman failed to include his previous grievance with regard to his disciplinary hearing, which resulted in its reversal, the trial court had no way to ascertain whether any of these complaints had previously been addressed and exhausted through the grievance process. *See* TEX. DEP'T OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK at 52 (listing grounds for appeal of a disciplinary hearing decision as: (1) one or more procedural rights were violated; (2) insufficient evidence to find offender guilty; (3) penalty imposed by the hearing officer was too severe). In his reply brief, Leachman attempts to justify excluding any explanation with regard to the disciplinary hearing reversal by stating that his "first complaints about his disciplinary hearing, which resulted in the reversal of his disciplinary conviction, did not contemplate litigation and are not part of this suit."

25

abuse of discretion for the trial court to dismiss these claims with prejudice. We overrule the remaining portion of Leachman's first issue.

### (c) Dismissal based on immunity

Chapter fourteen applies to Leachman's claims against Oncken. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.002. However, because Oncken was not a TDCJ employee, the exhaustion requirement addressed above does not apply. *See id.* § 14.005(a) (stating filing requirements for claims subject to the grievance system under section 501.008); TEX. GOV'T CODE ANN. § 501.008(a) ("A remedy provided by the grievance system is the exclusive administrative remedy available to an inmate for a claim for relief *against the department*.") (emphasis added).

Oncken asserted official immunity and qualified immunity in her answer. The trial court dismissed all of Leachman's claims against her after making "the necessary findings that she is entitled to absolute prosecutorial and qualified immunity." As Leachman does, we will assume that the trial court meant federal qualified immunity as to the § 1983 claims and official immunity as to the state claims.

### (i) Oncken's immunity defense – § 1983 claims

The doctrine of qualified immunity shields an official performing discretionary functions from liability for civil damages under § 1983, provided

26

the official's conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have been aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982); *Thomas v. Collins*, 860 S.W.2d 500, 503 (Tex. App.—Houston [1st Dist.] 1993, writ denied). After a government official asserts the affirmative defense of qualified immunity, the burden shifts to the plaintiff to show that the defendant's conduct violated clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Thomas*, 860 S.W.2d at 503; *see also Whatley v. Philo*, 817 F.2d 19, 20–21 (5th Cir.1987) (describing test for qualified immunity). Therefore, we examine Leachman's § 1983 claims to determine which constitutional rights he claims were violated, and whether he pleaded the violation sufficiently. *See Brown v. Texas A & M Univ.*, 804 F.2d 327, 333–34 (5th Cir. 1986); *Thomas*, 860 S.W.2d at 503; *see also Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 2692 (1979) ("The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right secured by the Constitution and laws.").

Leachman alleged conspiracy to retaliate, which he claimed violated his due process rights, and that Oncken violated his due process rights in the disciplinary hearing. A § 1983 conspiracy claim is not actionable without an actual violation of § 1983. *Denson*, 63 S.W.3d at 463. In order to state a

27

claim for conspiracy under § 1983, a plaintiff must establish conspiracy in some detail and provide some factual basis for supporting the existence of conspiracy; conclusory statements suggesting conspiracy are not enough to state a claim. *Id.*

Moreover, to prevail on a retaliation claim brought under § 1983, an inmate must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.), *cert. denied*, 127 S. Ct. 596 (2006); *see also Vacca v. Farrington*, 85 S.W.3d 438, 441–42 (Tex. App.—Texarkana 2002, no pet.) (applying facts to retaliation test). The inmate must allege more than his personal belief that he is the victim of retaliation and must allege a chronology of events from which retaliation may be plausibly inferred. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). Causation requires a showing that but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Leachman alleged that Milbern initiated the retaliation against him after he filed his lawsuit. Therefore, as to the retaliation claim, the specific constitutional right at issue was Leachman's right of access to the courts. *See Thomas v. Wichita Gen. Hosp.*, 952 S.W.2d 936, 940 (Tex. App.—Fort Worth

28

1997, pet. denied) (stating that prisoners have a constitutional right of access to the courts). Leachman alleged that Milbern intended to retaliate, and did so, by instituting an investigation of his mail, which led to the investigation of the Browning letter and the disciplinary hearing, in which he contended his due process rights were violated, and which he claimed caused him emotional distress.[12] Therefore, notwithstanding his failure to exhaust his administrative remedies with regard to any alleged retaliation by TDCJ employees, Leachman may have stated a claim against Milbern, but Milbern is not a party to this appeal.

To state a claim for civil conspiracy, Leachman had to allege that (1) there were two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *Profitlive P'ship v. Surber*, 248 S.W.3d 259, 261 (Tex. App.—Fort Worth 2007, no pet.). In *Vacca*, an inmate brought a § 1983 action against prison officials, alleging that in retaliation for filing a federal suit complaining of staff misconduct, he was

---

[12] Leachman contends that he "suffered intense and severe mental and emotional distress during these events," and that, now, he "is afraid all the time, knowing that at any minute—even when he has done nothing wrong—vindictive TDCJ-CID employees can railroad and abuse him with virtual impregnability."

subjected to, among other things, the filing of false disciplinary actions against him. 85 S.W.3d at 439. Specifically, he alleged that three weeks after he requested an inmate trust account printout that he needed to mail his civil rights complaint, two TDCJ employees contrived a disciplinary infraction against him, in retaliation for his suit against their friends and coworkers, by planting a $100 bill on the floor when they strip-searched him. *Id.* at 441–42. The disciplinary hearing was held a week later and Vacca was found guilty. *Id*. at 442. He alleged that, as a result of the retaliation, he experienced pain, humiliation, weight loss, emotional distress, imminent fear for his life, and a chilling of his right to exercise access to the courts. *Id*.

In contrast to *Vacca*, Leachman never alleged facts to show that there was a meeting of the minds between Oncken, Adams, Boyle, and Johnson to continue and enlarge Milbern's "campaign of retaliation" against Leachman for filing the original lawsuit. *See Profitlive*, 24 S.W.3d at 261. He did not allege that Oncken knew that he had filed the lawsuit against Milbern or that Oncken ever spoke with anyone other than Mayo. *See id.* And he acknowledged that Oncken told Mayo that Browning's son was "not a victim in any case for which [Leachman] is serving time," that Mayo reported this to Boyle, and that Boyle chose to ignore this during the disciplinary hearing and imposed punishment. *See id.* Therefore, Leachman failed to allege sufficient facts to support his

claim that Oncken conspired with Adams, Boyle, and Johnson to continue and enlarge Milbern's alleged retaliation.

As to Leachman's procedural due process claim, the first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected property or liberty interest. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S. Ct. 977, 989 (1999); *City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 248–49 (Tex. App.—Fort Worth 2007, pet. denied). Procedural due process merely requires that when a governmental entity deprives an individual of liberty or property, that it do so "in a fair manner." *See United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101 (1987); *Centerfolds*, 232 S.W.3d at 248–49.

Leachman contended that Oncken violated his due process rights in the disciplinary process by denominating Browning's son as a "victim," that Oncken knew that she was providing a statement to be used against him in a disciplinary hearing, and that Oncken knew that her statement was false or that she had reckless disregard to its truth or falsity. However, Leachman also used Oncken's statement that Browning's son was not a victim to argue that he was deprived of due process by the TDCJ employees. And Leachman also acknowledged that the disciplinary case, in which Oncken's statements were used, had been overturned. Therefore, he failed to allege sufficient facts to

31

state a due process violation under § 1983 against Oncken. *See Collins v. King*, 743 F.2d 248, 254 (5th Cir. 1984) (stating that where inmate alleged that he was denied procedural due process in a disciplinary hearing, but failed to allege that the procedures for redress of the improper administrative proceeding were constitutionally inadequate, he failed to allege a due process violation).

Leachman failed to allege that Oncken conspired with anyone, that she knew about Milbern's alleged retaliation, that she knew Milbern or anyone else who worked in the TDCJ mail room, or that her actions, rather than Boyle's, caused his punishment. He also failed to allege sufficient facts to connect his denial of procedural due process in the subsequently-overturned disciplinary case to Oncken's statements, both of which established that Browning's son was not a victim of a crime for which Leachman was currently incarcerated. Therefore, as to Oncken's qualified immunity defense, Leachman failed to show that her conduct violated any clearly-established statutory or constitutional right because he failed to state any constitutional claims in his allegations. *See Whatley*, 817 F.2d at 20; *Thomas*, 860 S.W.2d at 503. Because Leachman failed to state any constitutional claims against Oncken, the trial court did not abuse its discretion by dismissing these claims against Oncken. We overrule this portion of Leachman's second issue.

32

**(ii) Oncken's immunity defense — state law claims**

Government officials are entitled to official immunity arising out of their performance of (1) discretionary duties (2) in good faith (3) and within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *Souder v. Cannon*, 235 S.W.3d 841, 852 (Tex. App.—Fort Worth 2007, no pet.). Official immunity is an affirmative defense, and the burden is on the officer to plead and prove its elements. *Chambers*, 883 S.W.2d at 653. However, "[t]he nature of an affirmative defense presupposes a *prima facie* claim." *Denton County v. Johnson*, 17 S.W.3d 46, 51 (Tex. App.—Fort Worth 2000, pet. denied). It follows, then, that without a claim for which suit may be brought, there is no affirmative defense to assert. *Id*. Therefore, we first examine Leachman's pleadings to determine whether he alleged sufficient facts to set out prima facie claims under state law.

Leachman contended that Oncken conspired with Adams, Johnson, and Boyle to behave in an extreme and outrageous manner, calculated to cause him severe emotional distress, and to maliciously initiate or continue a civil proceeding against him. He also claimed that, individually, she inflicted severe emotional distress on him through her intentional or reckless violation of his due process rights. We have previously addressed Leachman's failure to state due

33

process or conspiracy claims against Oncken and therefore overrule Leachman's second issue as it pertains to these claims.

As to his emotional distress claim, Leachman had to allege facts to show that (1) Oncken acted intentionally or recklessly; (2) her conduct was extreme and outrageous; (3) her actions caused him emotional distress; and (4) the resulting emotional distress was severe. *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

Leachman alleged facts to support Oncken's statements as intentionally made and alleged that he suffered severe emotional distress. However, he failed to allege facts to support the causation element because he failed to allege facts to show that Oncken's statements, rather than Boyle's disregard of those statements during the hearing, were the cause of his punishment. Therefore, we overrule Leachman's second issue as it pertains to his emotional distress claim.

As to his malicious prosecution claim against Oncken, Leachman had to allege the following facts to support a prima facie claim: (1) that civil proceedings were instituted or continued against him; (2) by or at Oncken's insistence; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in Leachman's favor; and (6) special damages. *Tex. Beef Cattle Co. v. Green*,

34

921 S.W.2d 203, 207 (Tex. 1996). Assuming arguendo that a claim for malicious prosecution exists for an administrative proceeding, Leachman failed to allege any facts to show that Oncken insisted on the continuation of the disciplinary hearing against him. Therefore, we overrule this remaining portion of Leachman's second issue.

## IV. Conclusion

We reverse the trial court's dismissal with prejudice as to Leachman's claim against Dretke and remand the case to afford Leachman a reasonable opportunity to amend his pleadings as to that claim only. Having overruled the remainder of Leachman's four points, we affirm the rest of the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL B: DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED: July 10, 2008

35