COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-401-CV

 

 

JERRY HOLLINGSWORTH AND                                            APPELLANTS

KENNETH ANDERSON

                                                   V.

 

KIM HACKLER, INDIVIDUALLY
                                              APPELLEES

AND AS NEXT FRIEND FOR 

C.H., A MINOR, AND STEVE 

HACKLER, INDIVIDUALLY 

ANDAS NEXT FRIEND FOR
C.H., 

A
MINOR                                                                                            

 

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Appellants Jerry Hollingsworth and Kenneth
Anderson appeal the trial court=s denial
of their motion for summary judgment based on qualified immunity.  We reverse and render.








                                         I.    Background

In October 2003, C.H., the child
of Kim and Steve Hackler, was a student at Dawson Middle School (Dawson) in the
Carroll Independent School District. 
Appellant Jerry Hollingsworth was the principal and appellant Kenneth
Anderson was the assistant principal of Dawson. 
On October 21, 2003, C.H. made an obscene gesture toward some of his
classmates in response to their making fun of him.  Later that day, certain classmates of C.H.
accused him of making physical threats toward one or more students.  At the time, C.H. was disabled for purposes
of the Individuals with Disabilities Education Act (IDEA)[1]
by virtue of being diagnosed with attention deficit disorder (ADD) in 2002. 








On October 27, 2003, an admission, review, and
dismissal (ARD) Amanifestation determination@
committee meeting was held.[2]  The ARD committee included the Hacklers,
Hollingsworth, Anderson, other educators from the school district, a counselor,
and a psychologist.  The purpose of the
ARD committee meeting was to determine if C.H.=s
behavior in making an obscene gesture on October 21 and allegedly threatening
students was a Amanifestation@ of his
ADD, as that term is defined by the IDEA and implementing regulations.[3]  The ARD committee determined that C.H.=s
behavior was not a manifestation of his ADD, and the Hacklers admit they
initially agreed with this determination. 

Later that day, however, Anderson informed the
Hacklers that, based on the ARD committee=s
determination, C.H. would be disciplined by placement in the school district=s
Disciplinary Alternative Education Program (DAEP) for forty-five days.  The Hacklers informed Anderson that they had
changed their minds and disagreed with the ARD committee=s
determination.  By the end of the day,
they filed a request for a special education due process hearing with the Texas
Education Agency to review the DAEP decision. 
The Hacklers= request allowed C.H. to remain
at Dawson pending the outcome of the hearing. 
Ultimately, the Hacklers and the school district resolved their dispute
through mediation, and C.H. was allowed to transfer schools without spending
time in the DAEP. 








Appellees sued Hollingsworth and Anderson for
libel, slander, malicious prosecution, gross neglect, gross negligence, malice,
and a claim under the Civil Rights Act of 1871, 42 U.S.C.A. ' 1983.  Appellees= ' 1983
claim was based on the allegation that Hollingsworth and Anderson violated C.H.=s rights
under the IDEA by placing C.H. in the DAEP for forty-five days instead of
referring the disciplinary decision to the ARD committee. 

Hollingsworth and Anderson filed traditional and
no-evidence summary judgment motions based, in part, on the qualified immunity
of public officials sued in their individual capacities under ' 1983.  The trial court denied their motions as to
qualified immunity on the ' 1983
claim, but granted summary judgment on all remaining claims against them.  On September 24, 2008, the trial court denied
a motion to reconsider, and this appeal followed. 

                                    II.    Qualified Immunity 

Appellants= sole
issue on appeal is whether the trial court erred in denying their traditional
and no-evidence motions for summary judgment based on the qualified immunity of
public school officials sued in their individual capacities under ' 1983
for violations of the IDEA.

A.     Standard of Review








After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for no-evidence summary judgment on the ground that there is no
evidence to support an essential element of the nonmovant=s claim
or defense.[4]  The motion must specifically state the
elements for which there is no evidence.[5]  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.[6]








When reviewing a no-evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.[7]  We review a no‑evidence summary
judgment for evidence that would enable reasonable and fair‑minded jurors
to differ in their conclusions.[8]  We credit evidence favorable to the nonmovant
if reasonable jurors could, and we disregard evidence contrary to the nonmovant
unless reasonable jurors could not.[9]  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no-evidence summary judgment is not proper.[10]


We review a traditional summary judgment de novo.[11]  We consider the evidence presented in the
light most favorable to the nonmovant, crediting evidence favorable to the
nonmovant if reasonable jurors could, and disregarding evidence contrary to the
nonmovant unless reasonable jurors could not.[12]  We indulge every reasonable inference and
resolve any doubts in the nonmovant=s favor.[13]  A defendant is entitled to summary judgment
on an affirmative defense if the defendant conclusively proves all the elements
of the affirmative defense.[14]  To accomplish this, the defendant-movant
generally must present summary judgment evidence that establishes each element
of the affirmative defense as a matter of law.[15]  








B.     Qualified Immunity from Appellants= ' 1983
Claims

Section 1983 creates a private
right of action for violations of an individual=s
federally guaranteed rights by those acting under color of state law.[16]
The doctrine of qualified immunity shields an official performing discretionary
functions from individual liability for civil damages under ' 1983
if the official=s Aconduct
does not violate clearly established statutory or constitutional rights of
which a reasonable person would have known.@[17]








After a government official asserts the
affirmative defense of qualified immunity, the summary judgment burden shifts
to the plaintiff to show that the defendant=s
conduct violated a clearly established statutory or constitutional right.[18]  A right is Aclearly
established@ when its contours are Asufficiently
clear that a reasonable official would understand that what he is doing
violates that right.@[19]   Whether an official=s
conduct was objectively reasonable is a question of law for the court, not a
matter for the jury.[20]  If the plaintiff fails to show that the
official=s
conduct violated a clearly established statutory or constitutional right, the
official is entitled to have the claims dismissed.[21]

In this case, appellants contend that they are
entitled to qualified immunity because appellees failed to meet their burden of
showing that appellants violated C.H.=s rights
under the IDEA by failing to have the ARD committee decide whether to place
C.H. in the DAEP for forty-five days.[22]








The purpose of the IDEA is Ato
ensure that all children with disabilities have available to them a free
appropriate public education . . . designed to meet their unique
needs.@[23]  When a school seeks to discipline a child
with a disability, the IDEA requires that the child=s Aindividualized
education program team@ (IEP Team),[24]
including the child=s parents and educators, conduct
a Amanifestation
determination review.@[25]  An IEP Team is also referred to as an Aadmission,
review, and dismissal@ (ARD) committee.[26]  The purpose of the ARD committee=s
manifestation determination review is to determine whether the child=s behavior
was a manifestation of the child=s
disability.[27]








If the ARD committee determines that the child=s
behavior was not a manifestation of the child=s
disability, then the IDEA provides that Athe
relevant disciplinary procedures applicable to children without disabilities
may be applied to the child in the same manner in which they would be applied
to children without disabilities,@ so long
as the child is given a free appropriate public education.[28]  The IDEA specifically states that, under
these circumstances,  A[s]chool
personnel . . . may order a change in the placement of a
child with a disability . . . to an appropriate interim
alternative educational setting for the same amount of time that a child
without a disability would be subject to discipline.@[29]  The IDEA also provides parents procedural
safeguards, including the right to participate as a member of the ARD committee
conducting the manifestation determination review and the right to appeal to a
hearing officer if they disagree with the manifestation determination or Aany
decision regarding placement.@[30]  Importantly, however, the IDEA grants no
authority to the ARD committee to decide what, if any, disciplinary procedures
are applicable to the child upon determining that the child=s
behavior is not a manifestation of the child=s
disability.[31]








Pursuant to the IDEA, the Hacklers were members
of the ARD committee that conducted the Amanifestation
determination review@ of C.H.=s
behavior.[32]  They do not dispute that the ARD committee
determined that C.H.=s behavior was not a
manifestation of his disability.  The
Hacklers contend, however, that they should have been afforded the opportunity
to participate in the decision regarding their child=s
discipline after it was determined that his behavior was not a manifestation of
his disability and that Hollingsworth and Anderson violated IDEA regulations
that allow parents to participate in decisions regarding their child=s Aeducational
placement@ by unilaterally deciding to
place C.H. in the DAEP for forty-five days.[33]

The Hacklers rely on 34 C.F.R. '
300.501(c), which states as follows:

(c) Parent involvement in
placement decisions.

 

        (1) Each public agency shall ensure that
the parents of each child with a disability are members of any group that
makes decisions on the educational placement of their child.

 

(2) In implementing the
requirements of paragraph (c)(1) of this section, the public agency shall use
procedures consistent with the procedures described in ' 300.345(a) through
(b)(1).[34]








This regulation requires school districts and other public agencies to
involve parents in decisions regarding the educational placement of their child
by following the procedures described in 34 C.F.R. '
300.345(a), which, in turn, requires that the parents of a child with a
disability be Apresent at each IEP
[individualized education program] meeting or are afforded the opportunity to
participate.@[35]  The Hacklers also rely on IDEA regulation 34
C.F.R. ' 300.552,
which similarly requires public schools to ensure that parents be included in Aa group@ that
determines Athe educational placement of a
child with a disability.@[36]  

Both federal regulations on which the Hacklers
rely expressly govern educational placement decisions.[37]  There is no language in either regulation,
however, evidencing a congressional intent to include parents in disciplinary
decisions involving children whose behavior is not a manifestation of a
disability.  Those decisions are
specifically governed by 20 U.S.C.A. ' 1415(k)(5)(A),
which provides in pertinent part:








If the result of the
[manifestation determination] review described in paragraph (4) is a
determination, consistent with paragraph (4)(C), that the behavior of the child
with a disability was not a manifestation of the child's disability, the
relevant disciplinary procedures applicable to children without disabilities
may be applied to the child in the same manner in which they would be applied
to children without disabilities, except as provided in section 1412(a)(1)
of this title [requiring that each child with a disability receive a free
appropriate public education].[38]

Under the express language of '
1415(k), when an ARD committee determines that the behavior of a child with a
disability is not a manifestation of the disability, the child may be
disciplined Ain the same manner@ as Achildren
without disabilities.@








The Hacklers conceded in the trial court that if
the ARD committee determined that C.H.=s
behavior was not a manifestation of his disability, Athen
consequences applicable to all students under the Dawson Student Code of
Conduct would apply to [C.H.].@  The Hacklers did not allege nor did they
present any evidence showing that the disciplinary procedures applicable to
Dawson children without disabilities require parental involvement in the school=s
disciplinary decisions.[39]  Accordingly, we hold that there is no
evidence that Hollingsworth and Anderson violated C.H.=s rights
under the IDEA by placing him in the DAEP for forty-five days without referring
the disciplinary decision to the ARD committee and, therefore, that
Hollingsworth and Anderson are immune from individual liability to the Hacklers
for civil damages under ' 1983 as a matter of
law.  Consequently, the trial court erred
by denying appellants= motions for summary judgment as
a matter of law.[40]

                                          III.   Conclusion

Because appellants are shielded against the
Hacklers= claims
based on the doctrine of qualified immunity as a matter of law, we reverse the
trial court=s denial of appellants= motions
for summary judgment and render 

 

 

 

 

 








judgment that appellees take nothing on their IDEA claims brought
under 42 U.S.C.A. ' 1983.

 

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

WALKER, J. concurs
without opinion.

DELIVERED: 
December 31, 2009











[1]20 U.S.C.A. '' 1400B1487 (West 2004).  The IDEA was amended by the Individuals with
Disabilities Education Improvement Act of 2004, which took effect on July 1,
2005.  Pub. L. No. 108B446, Title I, ' 101, 118 Stat. 2647
(2004); see id. Title III, ' 302, 118 Stat. 2647, 2803 (establishing
general effective date of July 1, 2005). 
All citations to the IDEA and Code of Federal Regulations are to
versions in effect during the period of time relevant to this appeal.





[2]See 34 C.F.R. ' 300.523.  By statute, the ARD committee is comprised of
members of the child=s AIEP TeamA (individual education
program team) and Aother qualified
personnel.@  20 U.S.C.A. ' 1415(k)(4)(B); see
also 34 C.F.R. ' 300.523(b) (stating
the same requirement in IDEA implementing regulation).  The child=s IEP Team includes the child=s parents, at least one
regular and one special education teacher of the child, and other school
officials.  See 20 U.S.C.A. ' 1414(d)(1)(B).





[3]See id. ' 1415(k)(4); 34
C.F.R. ' 300.523.





[4]Tex. R. Civ. P. 166a(i).





[5]Id.; Timpte Indus., Inc.
v. Gish, 286 S.W.3d 306, 310 (Tex. 2009).





[6]See Tex. R. Civ. P. 166a(i)
& cmt.; Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).





[7]Sudan v. Sudan, 199 S.W.3d 291, 292
(Tex. 2006).





[8]Hamilton, 249 S.W.3d at 426
(citing City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).





[9]Timpte Indus., Inc., 286 S.W.3d at 310
(quoting Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006)).





[10]Smith v. O=Donnell, 288 S.W.3d 417, 424
(Tex. 2009).





[11]Mann Frankfort Stein
& Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).





[12]Id.





[13]20801, Inc. v. Parker, 249 S.W.3d 392, 399
(Tex. 2008).





[14]Chau v. Riddle, 254 S.W.3d 453, 455
(Tex. 2008); see Tex. R. Civ. P. 166a(b), (c).





[15]Ryland Group, Inc. v.
Hood,
924 S.W.2d 120, 121 (Tex. 1996).





[16]See Richardson v.
McKnight,
521 U.S. 399, 403, 117 S. Ct. 2100, 2103 (1997).





[17]Harlow v. Fitzgerald, 457 U.S. 800, 818, 102
S. Ct. 2727, 2738 (1982); Leachman v. Dretke, 261 S.W.3d 297, 312 (Tex.
App.CFort Worth 2008, no pet.)
(op. on reh=g).





[18]Newman v. Kock, 274 S.W.3d 697, 705
(Tex. App.CSan Antonio 2008, no
pet.) (following Fifth Circuit burden-shifting framework for qualified immunity
claims); Leachman, 261 S.W.3d at 312 (same); see Pearson v. Callahan,
129 S. Ct. 808, 815B16 (2009) (describing
test for qualified immunity).





[19]Newman, 274 S.W.3d at 705
(citing Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir.
2000)).





[20]Williams v. Bramer, 180 F.3d 699, 703 (5th
Cir. 1999).





[21]Pearson, 129 S. Ct. at 815B16; Harlow, 457
U.S. 800, 818B19, 102 S. Ct. 2727, 2738B39; Leachman, 261
S.W.3d at 312B13 (citing Baker v.
McCollan, 443 U.S. 137, 140, 99 S. Ct. 2689, 2692 (1979) (AThe first inquiry in any ' 1983
suit . . . is whether the plaintiff has been deprived of a
right >secured by the
Constitution and laws.=@)).





[22]See Leachman, 261 S.W.3d at 312B13.





[23]20 U.S.C.A. ' 1400(d); see Leticia
H. v. Ysleta Indep. Sch. Dist., 502 F. Supp. 2d 512, 515 (W.D.
Tex. 2006) (quoting same).





[24]20 U.S.C.A. ' 1414(d)(1)(B).





[25]See id. ' 1415(k)(4); 34 C.F.R. ' 300.523 (a), (b).  A[I]f a disciplinary action involving a change of
placement for more than 10 days is contemplated for a child with a disability
who has engaged in other behavior that violated any rule or code of
conduct . . . that applies to all
children[,] . . . in no case later than 10 school days
after the date on which the decision to take that action is made, a review
shall be conducted of the relationship between the child's disability and the
behavior subject to the disciplinary action.@  20
U.S.C.A. ' 1415(k)(4).  By statute, this committee includes the child=s parents and other
members of the child=s IEP Team.  Id. ' 1414(d)(1)(B) (defining
IEP Team to include a child=s parents), ' 1415(k)(4)(B) (requiring manifestation
determination review to be conducted by IEP Team and Aother qualified personnel@).





[26]See, e.g., Adam J. ex rel.
Robert J. v. Keller Indep. Sch. Dist., 328 F.3d 804, 807 (5th Cir. 2003).





[27]See 20 U.S.C.A. ' 1415(k)(5)(A); 34 C.F.R.
' 300.523.  





[28]20 U.S.C.A. ' 1415(k)(5)(A); see
id. ' 1412(a)(1) (requiring
that A[a] free appropriate
public education is available to all children with
disabilities . . . including
children . . . who have been suspended or expelled
from school@).





[29]Id. ' 1415(k)(1)(A)(ii).





[30]Id. ' 1415(k)(6)(A)(i)
(establishing parental right to appeal manifestation determination or any
decision regarding placement); see id. ' 1415(k)(4)(B) (requiring
that child=s IEP Team be included on
ARD committee), ' 1414(d)(1)(B)(i)
(requiring parents to be members of their child=s IEP Team).





[31]See id. ' 1415(k)(4) (limiting ARD
committee role regarding manifestation determination review), ' 1415(k)(1) (defining
authority of school personnel to take disciplinary action, including ordering
the change in placement of a child with a disability).





[32]See id. ' 1415(k)(4), (k)(5)(A);
34 C.F.R. ' 300.523.





[33]34 C.F.R. '' 300.501(c)(1), 300.552.





[34]Id. ' 300.501(c) (emphasis
added).





[35]Id. ' 300.345(a).





[36]Id. ' 300.552.





[37]See id. ' 300.501(c)
(requiring Athat the parents of each
child with a disability are members of any group that makes decisions on the
educational placement of their child@), ' 300.552 (requiring that parents be included
in Aa group@ that determines Athe educational placement
of a child with a disability@).





[38]20 U.S.C.A. ' 1415(k)(5)(A)
(emphasis added); see id. ' 1412(a)(1) (requiring that A[a] free appropriate
public education is available to all children with disabilities residing in the
State between the ages of 3 and 21, inclusive, including children with
disabilities who have been suspended or expelled from school@); Colvin ex rel. Colvin
v. Lowndes County, Miss. Sch. Dist., 114 F. Supp. 2d 504, 509 (N.D.
Miss. 1999) (ACongress expressed no
intent, either expressly or impliedly, to shield special education students
from the normal consequences of their misconduct if that misconduct has nothing
to do with their disability.@) (citing Doe v. Bd. of Educ. of Oak Park
& River Forest High Sch. Dist. 200, 115 F.3d 1273, 1280 (7th Cir.), cert.
denied, 522 U.S. 998 (1997)).





[39]See 20 U.S.C.A. ' 1415(k)(5)(A).





[40]See Leachman, 261 S.W.3d at 312B15 (affirming dismissal
of ' 1983 claims against
public official based on qualified immunity when plaintiff failed to allege
facts stating constitutional claims).