IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00361-CV

 

Gordon R. Simmonds,

                                                                                    Appellant

 v.

 

TDCJ, et al.,

                                                                                    Appellee

 

 

 



From the 12th District
Court

Madison County, Texas

Trial Court No. 23516

 



memorandum Opinion



 








Gordon Simmonds, a state prison inmate,
appeals the trial court’s frivolousness dismissal of his suit against the Texas
Department of Criminal Justice—Institutional Division (the TDCJ) and several
TDCJ officials or employees:  Captain Kenneth N. Simmons, Warden Charles T.
O’Reilly, Lieutenant Bob K. Castleberry, Investigator David P. McLeod, and Grievance
Investigator Tawn Roddey.

Factual Background and Allegations

            Simmonds’s claims center
around the alleged wrongful confiscation of his personal property by TDCJ
employees.  He alleged in his second amended petition that on March 15, 2006,
during a semi-annual and unit-wide “shakedown” at the Huntsville Unit, Simmons
and Castleberry confiscated (1) Simmonds’s typewriter because it contained
contraband and (2) numerous personal items belonging to Simmonds because they
allegedly were excessive property.

            Simmons and Castleberry
seized the typewriter because Simmonds had stored inside it a bottle of
“white-out” correction fluid and “scotch” tape, both of which are contraband
(which Simmonds does not dispute).  Simmonds alleged that no TDCJ rule allowed
for the typewriter’s seizure and that its seizure without such a rule and without
disciplinary action being brought against him violates due process.

            As for Simmonds’s other
personal property, Simmonds alleged that the sizing bin that TDCJ uses in a
shakedown measures two cubic feet, which is the amount of personal property
that inmates may possess.  Simmonds had a cell storage bin—a “footlocker”—that measured
three cubic feet, and his legal materials took up two-thirds (two cubic feet) of
his footlocker.  All of Simmonds’s nonlegal, personal property would fit in the
one cubic foot of remaining space in his footlocker.  Simmonds also had
personal hygiene items (his “shelf” items) that TDCJ rules allow to be stored
on a cell shelf; they did not have to be stored in the footlocker, but they too
would have fit in the remaining one cubic foot of space.

            In September of 2005, in
anticipation of the next shakedown, Simmonds inquired of McLeod if Simmonds
needed to obtain an extra storage container for the extra one cubic foot of
legal materials that he would need available so that his other cubic foot of
legal materials and one cubic foot of personal property would fit in the
two-cubic-feet TDCJ sizing bin.[1] 
McLeod told Simmonds that he would not be issued an additional container for
his legal materials because all of Simmonds’s property, other than his shelf
items, would fit in Simmonds’s footlocker.  Simmonds also asked, and was told
by McLeod, that in a shakedown, Simmonds would not have to put his legal
materials in the sizing bin.

            Simmonds alleged that in the
March 15, 2006 shakedown, the inmates were required to take all of their
personal property to a gym for inspection and measuring.  Simmonds had all of his
personal property that would have to fit in the sizing bin in a red mesh bag. 
All of his shelf items were in a pillow case so they could be set aside and not
placed in the sizing bin, and all of his legal materials were in two red mesh
bags so that they too could be set aside.  Simmons and Castleberry required
Simmonds to place all of his property in the sizing bin, and because Simmonds’s
legal materials were most important to him, he put those in first.  After the
sizing bin had been filled with Simmonds’s legal materials, all of Simmonds’s
other personal property,[2]
including his shelf items and his Bible, which Simmonds alleged was exempt from
having to fit in his footlocker, were confiscated as excessive property.  When
Simmonds told Simmons and Castleberry that the shelf items were not required to
be stored in his footlocker and should not go in the sizing bin, he was asked,
“Do you see any shelves in here [i.e., in the gym]?”

            Simmonds further alleged
that he had filed a suit in February 2006 against TDCJ officials and that the property
confiscation that occurred a month later was in retaliation for this new suit and
is thus actionable under 42 U.S.C. § 1997d.  Simmonds also alleged that, before
the next shakedown, he received a yellow mesh bag for his legal materials, and
it was explained to him that the legal materials that he placed in the yellow
mesh bag would not have to be placed in the sizing bin.  In that next
shakedown, Simmonds said that he did not have to place his legal materials in
the sizing bin, nor did he have to place his shelf items in the sizing bin. 
Simmonds asserted that this occasion was an admission that the prior
confiscation of his property was unlawful.

            O’Reilly, the Warden, signed
Simmonds’s Step 1 Grievance relating to the confiscation, and Roddey, a
grievance investigator, signed his Step 2 Grievance.

Procedural Background

            Simmonds filed the instant
lawsuit pro se, along with his pauper’s affidavit with inmate account
statement, affidavit relating to previous filings, affidavit relating to
exhaustion of administrative remedies, and affidavit relating to the value of
confiscated items.  The district clerk issued a bill of costs for the $207
filing fee, and the trial court entered an order pursuant to section 14.006 of
the Civil Practice and Remedies Code ordering payment of those costs from
Simmonds’s inmate account.  

            The trial court also entered
an order directing the clerk to forward all of Simmonds’s filings to the
Attorney General’s Law Enforcement Defense Division and directed the Attorney
General to review the filings and, as amicus curiae, advise the trial
court if Simmonds’s filings complied with chapter 14 of the Civil Practice and
Remedies Code.  The Attorney General filed a reply as amicus curiae and,
other than asserting that Simmonds’s claims were frivolous, did not note any
noncompliance with Simmonds’s filings.  The Attorney General then filed an
answer for all the defendants.

            The defendants filed a
motion to dismiss under chapter 14, alleging that Simmonds’s suit was
frivolous.  An amended motion was filed, and attached were unauthenticated
copies of TDCJ offender property rules and excerpts from the offender
orientation handbook.  The trial court held a hearing on the amended motion,
granted it, and entered an order dismissing the action as frivolous under
chapter 14.  Simmonds appeals, asserting eight issues in his original brief and
an additional issue in a supplemental brief that he was given leave to file.

Chapter 14 Frivolousness Dismissal

            In his first issue, Simmonds
asserts that the trial court erred in dismissing his action as frivolous under
chapter 14. 

Section 14.003 allows a trial court to
dismiss a suit filed by an indigent inmate, either before or after service of
process, if the court finds that the claim is frivolous or malicious.  Tex. Civ. Prac. & Rem. Code Ann. §
14.003(a)(2).  In determining whether the claim is frivolous or malicious, the trial
court may consider whether (1) the claim’s realistic chance of ultimate success
is slight; (2) the claim has no arguable basis in law or in fact; (3) it is
clear that the party cannot prove facts in support of the claim; or (4) the
claim is substantially similar to a previous claim filed by the inmate because
the claim arises from the same operative facts.  Id. § 14.003(b).

            . . .

       The Texas Supreme Court has
expressed doubt about whether a trial court can properly dismiss a suit only
because the claim’s realistic chance of ultimate success is slight or because
it is clear that the party cannot prove facts in support of the claim.  Johnson
v. Lynaugh, 796 S.W.2d 705, 706-07 (Tex. 1990).  Practically speaking,
therefore, the trial court is limited to determining whether the claim has an
arguable basis in law or fact.  Bohannan v. Texas Bd. of Criminal Justice,
942 S.W.2d 113, 115 (Tex. App.—Austin 1997, writ denied).  

 

Smith, 33 S.W.3d at 340; see also Spurlock, 88 S.W.3d at
736.

…  

            The issue of whether there
was an arguable basis in law is a legal question that we review de novo.  Id.;
Moreland v. Johnson, 95 S.W.3d 392, 394 (Tex. App.—Houston [1st Dist.]
2002, no pet.).

 

            To determine whether the
trial court properly decided there was no arguable basis in law … , we examine
the types of relief and causes of action … to determine whether, as a matter of
law, the petition stated a cause of action that would authorize relief.  Johns,
2005 WL 428465, at *1; Spurlock, 88 S.W.3d at 736.  We review and
evaluate pro se pleadings by standards less stringent than those applied to
formal pleadings drafted by lawyers.  Spurlock, 88 S.W.3d at 736 (citing
Thomas v. Collins, 860 S.W.2d 500, 503 (Tex. App.—Houston [1st Dist.]
1993, writ denied)).  Also, in reviewing the dismissal …, we are bound to take
as true the allegations in his petition.  Jackson v. Tex. Dep’t Crim.
Justice-Inst. Div., 28 S.W.3d 811, 813 (Tex. App.—Corpus Christi 2000, pet.
denied).

 

Brewer v. Simental, 268 S.W.3d 763, 769-70 (Tex. App.—Waco
2008, no pet.).  A claim has no arguable basis in law if it is an indisputably
meritless legal theory.  Leachman v. Dretke, 261 S.W.3d 297, 304 (Tex.
App.—Fort Worth 2008, no pet.).

We find no case law on what it means for
a claim to have “no arguable basis in fact” under subsection 14.003(b)(2).[3] 
We thus turn to case law under Rule 13, which authorizes a trial court to
impose sanctions against an attorney, a represented party, or both, who file a
groundless pleading brought in bad faith or brought for the purpose of
harassment.  Tex. R. Civ. P. 13. 
Rule 13 defines “groundless” as having “no basis in law or fact and not
warranted by good faith argument for the extension, modification, or reversal
of existing law.”  Id.  In that inquiry, the trial court
must examine the facts available to the litigant and the circumstances existing
when the litigant filed the pleading.  Alejandro v. Bell, 84 S.W.3d 383,
392 (Tex. App.—Corpus Christi 2002, no pet.).  The trial court uses an
objective standard to determine if a pleading was groundless:  did the party
and counsel make a reasonable inquiry into the legal and factual basis of the
claim?  In re United Servs. Auto Ass’n, 76 S.W.3d 112, 115 (Tex.
App.—San Antonio 2002, orig. proceeding).  We review Rule 13 groundlessness for
abuse of discretion.  See Cire v. Cummings, 134 S.W.3d 835, 838 (Tex. 2004).  A clear failure by the trial court to analyze or apply the law correctly is an
abuse of discretion.  Leachman, 261 S.W.3d at 304.

            Simmonds’s live pleading
alleged the following causes of action against TDCJ:  a claim under the Texas
Tort Claims Act and a request for indemnification under subsection
104.002(a)(2) of the Civil Practice & Remedies Code for his claims against
the individual defendants.  Simmonds alleged the following causes of action
against the individual defendants:  fraud (and statute of frauds); detinue; conversion;
fraudulent conversion; trespass to chattels; trespass to personal property;
conspiracy; replevin; violation of Texas Theft Liability Act; and violations of
42 U.S.C. §§ 1983 and 1997d.

Texas Tort Claims Act:  Simmonds asserts a claim against the
TDCJ under the Texas Tort Claims Act, alleging that he has suffered personal
injury (pain and suffering from having to handwrite with arthritic hand and
fingers) as a result of Simmons and Castleberry’s confiscation of his
typewriter ribbons and printing wheels through the use of the sizing bin, which
is tangible personal property.  See Tex.
Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 2005) (“A
governmental unit in this state is liable for: … personal injury and death so
caused by a condition or use of tangible personal or real property if the
governmental unit would, were it a private person, be liable to the claimant
according to Texas law.”).

From Simmonds’s pleadings and brief, it
is clear that he alleges an intentional tort by Simmons and Castleberry in the
confiscation of these items.[4] 
One of the Act’s exceptions from its limited waiver of immunity is the
intentional-tort exception:  the Act does not apply to a claim “arising out of
assault, battery, false imprisonment, or any other intentional tort, … .”  Tex. Civ. Prac. & Rem. Code Ann. §
101.057(2) (Vernon 2005); see City of Waco v. Williams, 209 S.W.3d 216,
221-22 (Tex. App.—Waco 2006, pet. denied).  Because the State has not waived
sovereign immunity as to Simmonds’s claim under the Texas Tort Claims Act, that
claim has no arguable basis in law or in fact, and the trial court did not err or
abuse its discretion in dismissing it as frivolous.

Indemnification under subsection
104.002(a)(2): 
Simmonds seeks recovery of his section 1983 damages under subsection
104.002(a)(2), which provides for the State’s indemnification of State
employees and contractors identified in section 104.001 who have had
damages assessed against them.  See Tex.
Civ. Prac. & Rem. Code Ann. § 104.001 (Vernon Supp. 2009), § 104.002
(Vernon 2005).  Simmonds is not a person who is entitled to such
indemnification; i.e., chapter 104 is not a vehicle for Simmonds to
recover damages.  See id.; Montana v. Patterson, 894 S.W.2d 812,
815 (Tex. App.—Tyler 1994, no writ).  Because Simmonds cannot recover damages
under subsection 104.002(a)(2), his theory of relief under it has no arguable
basis in law or in fact, and the trial court did not err or abuse its
discretion in dismissing it as frivolous.

Fraud:  Simmonds claims that McLeod committed fraud[5]
by misrepresenting to him that he would not have to put his legal materials in
the sizing bin and that he thus did not need another storage container in his
cell.  The elements of fraud are:  (1) a material representation was made; (2)
the representation was false; (3) when the representation was made, the speaker
knew it was false or made it recklessly without any knowledge of the truth and
as a positive assertion; (4) the speaker made the representation with the
intent that the other party should act on it; (5) the party acted in reliance
on the representation; and (6) the party thereby suffered injury.  Long v.
Tanner, 170 S.W.3d 752, 754 (Tex. App.—Waco 2005, pet. denied).  Simmonds’s
petition and brief indicate that he had no choice regarding McLeod’s (or
Simmons and Castleberry’s)[6]
representations about Simmonds’s property and whether he needed or could have
another container, so we agree with the State that he cannot establish that he
acted in reliance on any possible misrepresentation.  His fraud claim has no
arguable basis in law or in fact, and the trial court did not err or abuse its
discretion in dismissing it as frivolous.

Simmonds asserts that O’Reilly and
Roddey are liable for fraud because they were notified of McLeod’s allegedly fraudulent
conduct in the grievance process and did nothing to correct the harm.  Simmonds
does not plead or show that they can be liable to him for fraud in failing to
correct the alleged fraud and harm.  Thus, his assertion has no arguable basis
in law or in fact as a fraud claim, and the trial court did not err or abuse
its discretion in dismissing it as frivolous.

Conspiracy:  Simmonds claims that all of the
individual defendants conspired to unlawfully confiscate his property or to
defraud him of his property.  It is undisputed that all of these individuals,
except Roddey, were TDCJ employees or officials at the Huntsville Unit.  Because
they were employees or officials of the same unit at the time of the alleged
conspiratorial acts, they were members of the same collective entity and could
not have conspired with each other as a matter of law.  See Brewer, 268
S.W.3d at 773-74.  As for Roddey and her role in the alleged conspiracy,
Simmonds has not pleaded any facts (he has only made conclusory allegations
that she acted with the others in refusing to deal with the unlawful
confiscation and to return Simmonds’s property).  Simmonds has failed to allege
sufficient facts to support a conspiracy claim involving Roddey.  See Leachman,
261 S.W.3d at 314; cf. Vacca v. Farrington, 85 S.W.3d 438, 439-42 (Tex.
App.—Texarkana 2002, no pet.).  The conspiracy claim has no arguable basis in
law or in fact, and the trial court did not err or abuse its discretion in
dismissing it as frivolous.

Conversion:  Simmonds alleges that all the
individual defendants converted his personal property.

To establish conversion of personal
property, a plaintiff must prove that: (1) the plaintiff owned or had legal
possession of the property or entitlement to possession; (2) the defendant
unlawfully and without authorization assumed and exercised dominion and control
over the property to the exclusion of, or inconsistent with, the plaintiff’s
rights as an owner; and (3) the plaintiff suffered injury.  United Mobile
Networks, L.P. v. Deaton, 939 S.W.2d 146, 147-48 (Tex. 1997); Apple
Imports, Inc. v. Koole, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, pet.
denied).  If the defendant originally acquired possession of the plaintiff’s
property legally, the plaintiff must establish that the defendant refused to
return the property after the plaintiff demanded its return.  Presley v.
Cooper, 284 S.W.2d 138, 141 (Tex. 1955); Apple Imports, 945 S.W.2d
at 899.  

 

Lopez v. Lopez, 271 S.W.3d 780, 784 (Tex. App.—Waco
2008, no pet.); see Mitchell v. Tex. Dep’t Crim. Just., No. 06-04-00130-CV,
2005 WL 486389, at *2 (Tex. App.—Texarkana Mar. 3, 2005, no pet.).

Simmonds alleges that Simmons and
Castleberry wrongfully confiscated, and thus converted, his personal property
in the shakedown.  He alleges that O’Reilly, McLeod, and Roddey are liable for
conversion because they refused his demands to return his personal property.  Simmonds
makes no legal or factual showing that McLeod and Roddey, who are
investigators, have the power or duty to return wrongfully confiscated
property.  Accordingly, his conversion claim against McLeod and Roddey has no
arguable basis in law or in fact, and the trial court did not err in finding it
to be frivolous.  As for O’Reilly, we assume without deciding that a prison
warden does have the power or duty to return wrongfully confiscated property,
and to the extent that Simmonds’s conversion claim is not frivolous, as
discussed below, it is not frivolous as to O’Reilly.  See Mitchell,
2005 WL 486389, at *2 (holding that inmate’s conversion claim against warden
was not frivolous).

            Simmonds’s confiscated property
falls into three categories:  (1) shelf items; (2) miscellaneous personal
property; and (3) typewriter.  We will address each category separately.  Regarding
the shelf items, Simmonds asserted that they were not required to be stored in
his container and thus were not required to be placed in the sizing bin to
determine if Simmonds had excess property.  In the dismissal hearing, Patrick
acknowledged to the trial court that the offender property rules do not require
the shelf items to be placed in the sizing bin.  Those rules state that “one
(1) each of personal hygiene items may be stored on the shelf, if available”
and except the shelf items from the requirement that “the total volume of an
offender’s property must be placed in the closable storage container.”  Also
excepted are non-combustible items such as electrical appliances, and we agree
with Simmonds that his confiscated electric razor falls within this exception.[7] 
Finally, Simmonds pleaded that in a subsequent shakedown, he was not required
to place his shelf items in the sizing bin.  We find that Simmonds’s claim for
conversion of his shelf items has an arguable basis in law and in fact, and the
trial court erred or abused its discretion in concluding otherwise.

            Regarding Simmonds’s
miscellaneous personal property that was confiscated because Simmond’s legal
materials completely filled the sizing bin in the shakedown, the rules provide
that an offender can request and is entitled to receive an additional storage
container for his legal materials if his first container is totally filled with
legal materials and a “reasonable amount” of other personal property items,
with a reasonable amount defined as not exceeding one-half of the available
space in the first container.  Simmonds asserted in his petition and in the
hearing that his personal property took up one-third of the space in his
container and his legal materials took up two-thirds of the space.  Legal
materials are treated separately in the property rules, and nothing in the
rules includes legal materials as part of an offender’s allowed two cubic feet
of personal property, which of course is explainable because offenders can be
entitled to additional storage for their legal materials.  Furthermore,
Simmonds pleaded that in a subsequent shakedown, he was not required to place
his legal materials in the sizing bin.  We find that Simmonds’s claim for
conversion of his miscellaneous personal property has an arguable basis in law
and in fact, and the trial court erred or abused its discretion in concluding
otherwise.

            Simmonds’s typewriter was
confiscated because Simmonds had placed contraband (“white-out” correction
fluid and “scotch” tape) in it.  Simmonds concedes that those items were
contraband and were properly confiscated, but he claims that no rule allowed for
the typewriter’s confiscation.  He says that he placed the contraband in the
typewriter not to hide it, but to store it in the most sensible place for it
because he only used the white-out when he typed.

            The property rules state
that contraband is to be confiscated and defines contraband as “altered,
out-of-place, or excesses of authorized property; and any item which an
offender is prohibited to possess or obtain while in custody, unless received
by the offender as the result of a State or Federal court order or legitimately
through the litigation process.”  Contraband is also defined in the handbook as
any “item used to violate a TDCJ rule.”

            The defendants argue that
the typewriter was properly confiscated as contraband, and thus was not
converted, because Simmonds used it to hide contraband and it thus was an item
used to violate a TDCJ rule.  This argument is akin to Texas forfeiture law,
which provides for the forfeiture of contraband, which generally means property
“used in the commission” or “used or intended to be used in the commission” of
various enumerated felonies.  See Tex.
Code Crim. Proc. Ann. art. 59.01(2)(A, B) (Vernon Supp. 2009).  However,
we cannot agree at this point with the defendants’ argument because the
handbook’s definition is not unambiguous and we cannot say as a matter of law
that the typewriter was an item “used to violate a TDCJ rule.”[8] 
Moreover, Simmonds’s factual explanation for why the contraband was in his
typewriter gives his conversion claim an arguable basis in fact.[9] 
We find that Simmonds’s claim for conversion of his typewriter has an arguable
basis in law and in fact, and the trial court erred or abused its discretion in
concluding otherwise.

            Detinue, Trespass to
Chattels, Trespass to Personal Property, Theft Liability Act, and Replevin: 
Based on the same facts as those for his conversion claim, Simmonds asserts
common-law causes of action for detinue, trespass to chattels, trespass to personal
property, and replevin, and a statutory claim under the Theft Liability Act.  

            At common law when a
defendant unlawfully detained property from a plaintiff, the plaintiff might
sue him either in detinue or trover.  If he sued in detinue it was because he
desired to recover his property together with damages for its unlawful
detention.  If he sued in trover it was because he elected to treat the
detention as a conversion of the property by defendant, whereby the title
thereto passed to defendant as of the time of the conversion, and he recovered
the value of the property at the time it was converted.

 

Hankey v. Employer’s Cas. Co., 176 S.W.2d 357, 360-61 (Tex. Civ.
App.—Galveston 1943, no writ).

            An action for trespass to
chattels is similar to conversion but differs in the measure of damages
recoverable.  O’Connor’s Texas Causes of
Action 159 (2008).  On a trespass to chattels claim, the plaintiff can
recover only the diminished value of his property and the damage to his
interest in its possession or use.  Id. (citing Restatement (2d) of Torts § 222A comt. c)); see Chair
King, Inc. v. GTE Mobilnet of Houston, Inc., 135 S.W.3d 365, 395 (Tex.
App.—Houston [14th Dist.]. 2004), rev’d on other grounds, 184 S.W.3d 707
(Tex. 2006).  An action for trespass to personal property, or personalty, “is
an unlawful injury to, or interference with, possession, with or without the
exercise of physical force.”  Jamison v. Nat’l Loan Investors, L.P., 4
S.W.3d 465, 469 n.2 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

            A statutory civil action for
theft of personal property exists, the difference with a conversion action
being the defendant’s intent to deprive the plaintiff of the property and
additional damages.  See Tex.
Civ. Prac. & Rem. Code Ann. §§ 134.003(a), 134.005(a)(1) (Vernon
2005); Tex. Pen. Code Ann. § 31.03(a),
(b) (Vernon Supp. 2009).  Conversion does not require proof of wrongful intent
to deprive.  O’Connor’s Texas Causes of
Action 871 (2008).

            While Simmonds’s claims for
detinue, trespass to chattels, trespass to personal property, and theft
liability are largely duplicative of his conversion claim, we find that they
have an arguable basis in law and in fact for the same reasons as his
conversion claim, and the trial court erred or abused its discretion in
concluding otherwise.

            Replevin is an “action for
the repossession of personal property wrongfully taken or detained by the
defendant, whereby the plaintiff gives security for and holds the property
until the court decides who owns it.”  Black’s
Law Dictionary 1302 (7th ed. 1999); see, e.g., Seureau v. Mudd,
515 S.W.2d 746 (Tex. Civ. App.—Houston [14th Dist.] 1974, writ ref’d n.r.e.). 
While Simmonds appears to not have given security for the property whose return
he seeks, he still could.  Because we have held that Simmonds’s
conversion-related claims are not frivolous, we hold that his action for
replevin, while not sustainable in the absence of Simmonds giving security, is
not frivolous on its face, and the trial court erred or abused its discretion
in concluding otherwise.

             Section 1983:  Simmonds
alleges a section 1983 action against the individual defendants (O’Reilly, Roddey,
Simmons, and Castleberry) in their individual capacities for violating his
right to due process in the confiscation of his typewriter by applying a nonexistent
property rule and by confiscating his typewriter as punishment in lieu of charging
him with a disciplinary case and having a disciplinary hearing relating to his
possession of the typewriter as contraband.[10] 


Section 1983 provides a cause of action
and remedy when any “person” acting under color of state law deprives another
of rights, privileges, or immunities protected by the U.S. Constitution or
laws.  Gordon v. Scott, 6 S.W.3d 365, 369 (Tex. App.—Beaumont 1999, pet.
denied) (citing Thomas, 960 S.W.2d at 109).  A section 1983 action will
lie against state officials in their personal or individual capacities.  Id. 


 

Brewer, 268 S.W.3d at 770.

            In their amended motion to
dismiss and at the hearing, the defendants argued that they followed TDCJ rules
in confiscating Simmonds’s property and that the grievance system afforded him
due process, noting the application of the Parratt/Hudson[11]
doctrine.

Under the Parratt/Hudson doctrine, “a deprivation of a constitutionally
protected property interest caused by a state employee's random, unauthorized
conduct does not give rise to a § 1983 procedural due process claim, unless the
State fails to provide an adequate postdeprivation remedy.”  Zinermon v.
Burch, 494 U.S. 113, 115, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).  Conduct
is not “random and unauthorized” for purposes of the Parratt/Hudson
doctrine if the state “delegated to [the defendants] the power and authority to
effect the very deprivation complained of.”  Zinermon, 494 U.S. at 138,
110 S.Ct. 975.

 

Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004).  In Allen,
the Fifth Circuit addressed a similar due process claim relating to the
confiscation of an inmate’s property and held that, because the items were confiscated under the authority of a prison
administrative directive, the confiscation was not a random, unauthorized act
by a state employee and that the Parratt/Hudson doctrine thus did not
apply.  Id.  For the same reason, we hold that the Parratt/Hudson doctrine
does not apply and that, based on the meager record before us, Simmonds’s
section 1983 claim against O’Reilly, Roddey, Simmons, and Castleberry has an arguable basis in law and in fact and should not
have been dismissed as frivolous.  Cf. Allen v. Thomas, No. H-02-3132,
2005 WL 2076033 (S.D. Tex. Aug. 26, 2005) (granting summary judgment on inmate’s
due process claim after discovery taken and with detailed analysis of evidence
and law).

            Section 1997d:  Simmonds’s
brief does not address at all his claim for an alleged violation of 42 U.S.C. §
1997d.  By not briefing it, Simmonds has waived any complaint about its
dismissal by presenting nothing for review.  See Strange v. Continental Cas.
Co., 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied); Tex. R. App. P. 38.1 (g), (h).

            In conclusion, except for
Simmonds’s conversion claim and related claims (detinue, replevin, trespass to
personal property and to chattels, and statutory theft liability) and his section
1983 claim (except as to his additional claim against Roddey), the trial court
did not abuse its discretion or err in dismissing Simmonds’s claims as
frivolous.  We sustain in part and overrule in part Simmonds’s first issue, and
these claims will be remanded for further proceedings.

Other Issues

            In his second issue, Simmonds
claims that the trial court erred in refusing to file findings of fact and
conclusions of law, despite Simmonds’s request that was prematurely filed and
thus deemed filed on the day of, but immediately after, the signing of the
dismissal order.  See Tex. R.
Civ. P. 306c.  Simmonds, however, did not file a notice of past-due
findings and conclusions, and even if we were to agree that findings and
conclusions were required, Simmonds has not preserved his right to complain
about the trial court’s failure to file findings and conclusions.  See Tex. R. Civ. P. 297; Gaxiola v.
Garcia, 169 S.W.3d 426, 429 (Tex. App.—El Paso 2005, no pet.).  We overrule
issue two.

            In issue three, Simmonds
asserts that the trial court erred by not acting on his motion to modify,
correct, or reform the judgment.  That motion, however, was overruled by
operation of law.  See Tex. R.
Civ. P. 329b(c).  Moreover, our disposition of issue one resolves
Simmonds’s complaint.  Issue three is overruled.

Simmonds’s fourth issue asserts that the
trial court erred in sending him a notice under subsections 14.007(a) and 14.011(a)
that, because this case had been dismissed as frivolous, Simmonds could not
file another claim until he paid the fees and costs assessed in this case.  We
addressed this issue in an original proceeding brought by Simmonds, holding in
his favor that, because this appeal was pending, “subsection 14.011(a) does not
allow a clerk or trial court to refuse to accept for filing another claim by an
inmate until the inmate has exhausted or waived his appeal of the dismissal
order at issue in the subsection 14.007(a)(2) finding.”  In re Simmonds,
271 S.W.3d 874, 883 (Tex. App.—Waco 2008, orig. proceeding).  Accordingly, we
overrule issue four.

            As previously noted, the
trial court directed the clerk to forward Simmonds’s filings to the Attorney
General’s office and directed it to review the filings and, as amicus curiae,
file “an advisory” with the trial court as to whether Simmonds’s filings complied
with chapter 14.  The Attorney General’s amicus curiae reply asserted
that Simmonds’s claims were frivolous, but did not note any chapter 14
noncompliance.  The amicus curiae reply begins by stating that it is
being filed by the Office of the Attorney General, as amicus curiae, but
the attorney’s signature block identifies the Attorney General and his listed
assistants as attorneys for the defendants.  Thereafter, the Attorney General’s
office appeared and answered as counsel for the defendants.  After the filing
of the amicus curiae reply, Simmonds filed a motion that included an
objection to the reply’s status as an amicus curiae filing.

            In his fifth issue, Simmonds
complains that the trial court abused its discretion in allowing the Attorney
General’s office to appear as amicus curiae when it represents the
defendants in the same action and always represents the defendants in inmate
litigation against TDCJ officials and employees.  We agree with Simmonds’s
assertion that the status of the Office of the Attorney General’s reply was not
that of a true amicus curiae,[12]
but Simmonds did not seek relief in the trial court.  On appeal, he seeks no
relief for the reply’s filing, nor can he show reversible error.  See Tex. R. App. P. 44.1.  We thus overrule
issue five.

            In the same order requesting
an amicus curiae advisory, the trial court requested the Attorney
General to obtain authority to represent the defendants and answer on their
behalf.  If the Attorney General could not locate a defendant or secure a defendant’s
authorization, a statement or affidavit of the defendant’s last known address
was to be filed ex parte and under seal, subject to the plaintiff’s
motion to unseal for good cause.  Not knowing the correct identity of defendant
Captain Kenneth N. Simmons, Simmonds initially named Sergeant Kevin D. Simmons
as a defendant.  After Simmonds filed an amended petition that named Kenneth N.
Simmons as the proper defendant and omitted Kevin D. Simmons as a defendant,
the Attorney General filed a motion to dismiss Kevin D. Simmons (Kenneth’s
brother) as an improper party, which the trial court granted at the hearing on
the amended motion to dismiss the suit as frivolous.[13]

            In a “motion requesting
unsealing of affidavits,” Simmonds alleged impropriety by the Assistant
Attorney General who initially reviewed Simmonds’s filings because that
attorney should not have failed to immediately disclose that Simmonds had named
the incorrect Simmons as a defendant.  Simmonds requested the trial court to
take appropriate action as to the attorney’s alleged misconduct and also
requested the trial court to unseal the statement or affidavit of defendants’
last known addresses so that Simmonds could learn the identity of the attorney
who filed it and how Kevin D. Simmons was identified.

            Issue six asserts that the
“trial court abused its discretion by not taking appropriate action when
evidence had been presented establishing wrongdoing and misconduct” of the
defendants’ attorneys.  Issue seven asserts that the trial court abused its
discretion in failing to grant Simmonds’s motion to unseal the affidavits.  Simmonds,
however, did not request and obtain a ruling denying this motion, and he
therefore failed to preserve these complaints for appellate review.  See
Tex. R. App. P. 33.1(a); Hull
v. Davis, 211 S.W.3d 461, 466 (Tex. App.—Houston [14th Dist.] 2006, no
pet.).  We overrule issues six and seven.

            Simmonds’s supplemental
issue, which the defendants did not respond to, asserts that the trial court
erred by assessing costs against Simmonds for subpoena and service fees when
there had not yet been a finding under section 14.007 and Simmonds had not yet had
a previous action dismissed as frivolous.  We noted this issue in Simmonds’s
mandamus proceeding.  See Simmonds, 271 S.W.3d at 880 & n.4. 
Simmonds, however, did not raise this issue in the trial court and request and
obtain a ruling on it.  He has therefore failed to preserve his complaint for
appellate review.  See Tex. R.
App. P. 33.1(a).  We overrule his supplemental issue.

            In conclusion, having
sustained in part Simmonds’s first issue, we reverse in part the trial court’s
order dismissing Simmonds’s suit as frivolous and remand this case for further
proceedings.  We otherwise affirm the trial court’s dismissal order.

 

REX D. DAVIS

Justice

            

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

(Chief Justice Gray concurs in part and
dissents in part with a note)*

Affirmed
in part, reversed and remanded in part

Opinion
delivered and filed February 24, 2010

[CV06]

 

*(Chief
Justice Gray concurs in part and dissents in part.  A separate opinion
will not issue.  He provides, however, the following note.  When any
litigant buries what a majority of this Court has now finally determined is a legally and factually arguable claim
amongst numerous unfounded claims, I do not
believe the trial court errs in dismissing the entire suit as frivolous. 
It has taken the Court 23 pages of detailed analysis to wade through the
plaintiff’s claims and the Court has determined
that almost all of the plaintiff’s claims have
no basis in law or fact.  I do not believe that a trial court is obligated
to attempt such an endeavor.  And I do not believe that we are obligated
to engage in such an endeavor as part of our
review of the trial court’s judgment in search of an arguable claim,
particularly when the statute expressly provides that the trial court may
dismiss a claim if its realistic chance of success is slight.  There are
numerous analogous situations in the law in which it is held that the litigant
has waived their objection or claim.  For example if a litigant makes
numerous unfounded objections that serve only to obfuscate or hide a
potentially valid objection, it is held that the litigant has waived his
potentially proper objection.  Likewise,
if a litigant offers for introduction into
evidence both admissible and inadmissible evidence
en-mass, and the trial court overrules an objection to the introduction of the
evidence, it is the objecting litigant’s burden
to identify, separate, and object to only the inadmissible
evidence or the objection is waived even if
some part of the evidence was not admissible.  As a further example, if an
appellant makes no reference or only a general reference to the record for
evidence supporting an argument the appellate court is not obligated to scour
the appellate record for such evidence even if that evidence, if found in the
record, would require the appellate court to
reverse a summary judgment.  I believe this is an analogous
situation.  The Court’s opinion represents an enormous investment of the
State’s resources in identifying what is essentially one claim with only an
arguable factual basis, and that claim is hidden by duplication via the use of
archaic labels.  I would not have engaged in searching for such an
illusive creature.  And I do not believe that even the allegations
identified by the majority will support a claim.  But anything further
that I write on this, even the addition of citations for the legal propositions
referred to herein, is just a further expenditure of State resources on what I
believe is already a frivolous claim that the majority has determined must be
remanded to the trial court.  I would not.  I would affirm the trial
court’s judgment in its entirety.  I join no part of the opinion, in
particular that part that refuses to address whether the Court can properly
ignore the portion of the statute that expressly provides that a suit can be
dismissed because its realistic chance of success is slight without that
determination having first been made by the trial court, the proceeding
dismissed by the trial court on that basis, and that dismissal having been
properly challenged on the basis that it is a violation of the due process
clause.  The Court impliedly does this on behalf of Simmonds.  I
would not.  Thus I concur in the Court’s judgment only to the extent that
the Court affirms the trial court’s judgment of dismissal, but respectfully
dissent to the reversal and remand of any part or portion of the trial court’s
judgment.)

 









[1] It is unclear from the record whether
Simmonds formally requested another storage container.

 





[2] Simmonds’s shelf items consisted of
items such as deodorant, shampoo, and nail clippers, and his other personal
property consisted of miscellaneous items such as a dictionary, pens, a bowl,
typewriter ribbon cassettes and printing wheels, and an electric razor (which Simmonds
says the rules do not require being stored in the footlocker container).  He
valued the confiscated personal property at $438.20.





[3] The amended motion to dismiss sought
dismissal of Simmonds’s action because none of his claims have an arguable
basis in fact or law.  The trial court’s dismissal order does not state the
frivolousness reason (i.e., no arguable basis in fact, or no arguable
basis in law) for its dismissal.  The trial court held a hearing in which
Simmonds was present.  The Assistant Attorney General argued the amended motion
to dismiss for the defendants.  Simmonds argued against dismissal and factually
explained his claims and answered a few questions from the trial court, but he
was not sworn in and did not formally testify, nor was he cross-examined by the
defendants’ attorney.  Also present at the hearing for the defendants was John
Patrick, a TDCJ supervisor.  Patrick spoke in the hearing and answered
questions from the trial court, but he too was not sworn in and did not
formally testify, nor was he cross-examined by Simmonds.  Despite the unsworn,
informal testimony, we find that the trial court conducted a fact hearing on the
amended motion to dismiss.

                After the hearing, Simmonds filed an
objection to Patrick’s unsworn testimony.  In issue eight, Simmonds complains
that the trial court should not have allowed Patrick’s unsworn testimony and
that we should not consider it in this appeal.  Simmonds’s objection was
untimely, and it was apparent that Patrick was presenting evidence.  See
Tex. R. App. P. 33.1(a); Banda
v. Garcia, 955 S.W.2d 270, 272 (Tex. 1997) (opponent of testimony can waive
oath requirement by failing to object when opponent knows or should know that
objection is necessary).  We overrule issue eight.          





[4] “The proximate cause of Mr. Simmonds’
injury arises through and under his claim that Appellees had perpetrated a
fraud, and it was through the use of both bins that the fraud was completed …
.”  (Simmonds Brief at 8).





[5] Simmonds’s petition
mentions the “statute of frauds,” an established affirmative defense (see
Tex. R. Civ. P. 94; Tex. Bus. & Comm. Code Ann. § 26.01
(Vernon 2009)), in the litany of his causes of action.  To the extent he
asserts a cause of action under the statute of frauds, it has no arguable basis
in law or in fact, and the trial court did not err in finding it to be
frivolous.





[6] Simmonds’s brief explains that Simmons
and Castleberry’s fraud liability occurs because of their participation in a
conspiracy to defraud him of his property because they did not handle his legal
materials in the way that McLeod said they would.  The disposition of that
aspect of his fraud claim is included with our disposition of his conspiracy
claim.





[7] Simmonds also claims that his Bible was
excepted from the property rules requirement that it must be stored in his
container, but he does not cite a specific rule, nor do the defendants address
it.  While we find that the rules and offender orientation handbook allow an
offender to possess one religious text, we do not find that its storage is
addressed in either document.  In any event, his Bible’s confiscation also
falls within the category of miscellaneous personal property, which we address
next.





[8] In his “omnibus reply” to the
defendants’ pleadings, Simmonds alleged that other inmates stored their
whiteout in their typewriters, but in the shakedown, their typewriters were not
seized.





[9] The handbook also defines contraband as
an “item altered from its original condition.”  The amended motion to dismiss
argued that the typewriter was altered from its original condition to
accommodate the contraband, but the defendants presented no evidence that is
was altered, and Simmonds disputes that it was altered, stating that he merely
placed the white-out and tape inside the typewriter.  Contraband is also
defined in the handbook as items “stored in an unauthorized manner.”  The
motion also asserted that the typewriter was stored in an unauthorized manner,
“as a means to hide contraband.”  Simmonds disputes this argument too, arguing
that the contraband was stored in the typewriter and that the typewriter itself
was not improperly stored in his cell.  Simmonds thus presents an arguable
basis in law and in fact for why these other arguments do not necessarily
result in the typewriter being contraband.





[10] Simmonds also asserts
that Roddey “may” have violated his due process right by reviewing his Step 2
grievance when he was already suing her in a separate lawsuit.  Simmonds
provides no authority for this part of his section 1983 claim, and he also failed
to exhaust his administrative remedies by filing a separate grievance over
Roddey’s alleged impropriety.  See Tex.
Civ. Prac. & Rem. Code Ann. § 14.005 (Vernon 2002); Leachman v.
Dretke, 261 S.W.3d 297, 304, 308, 311 (Tex. App.—Fort Worth 2008, no pet.)
(if inmate fails
to exhaust administrative remedies, appellate court may affirm dismissal even
if ground was not presented in motion to dismiss) (allegations of reprisals by
TDCJ employees against inmates for filing grievances or lawsuits, or other
inmate complaints about TDCJ employee actions, are subject to grievance
procedure).  For these reasons, the trial court did not err in dismissing this
part of Simmonds’s section 1983 claim.





[11] Hudson v. Palmer, 468 U.S. 517,
104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Parratt v.
Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908,
68 L.Ed.2d 420 (1981), overruled in part by Daniels v. Williams, 474
U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

 





[12] “A true amicus curiae is without
interest in the proceeding in which he appears.  Burger v. Burger, 156
Tex. 584, 298 S.W.2d 119, 120-21 (Tex. 1957).  He is a ‘bystander’ whose
mission is to aid the court to act only for the personal benefit of the court. 
Id.”  In re Wingfield, 171 S.W.3d 374, 381 (Tex. App.—Tyler 2005,
orig. proceeding).

 





[13] By Simmonds’s naming Kenneth N. Simmons
as a defendant in his amended petition, Kenneth N. Simmons was made a party.  See
Reynolds v. Haws, 741 S.W.2d 582, 588-89 (Tex. App.—Fort Worth 1987, writ
denied).  Simmonds’s later motion to add Kenneth N. Simmons as a party was thus
unnecessary.  The omission of Kevin D. Simmons as a defendant in the amended
petition effectively dismissed him as a party.  See Woodruff v. Wright,
51 S.W.3d 727, 731 (Tex. App.—Texarkana 2001, pet. denied).  His motion to have
him dismissed as an improper party thus was also unnecessary.

                At the frivolousness dismissal hearing, the
defendants’ attorney noted that Kenneth N. Simmons had been listed as a party
but had not been served, and the trial court informed Simmonds that he needed
to get him served.  That was not accomplished.